UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHARLES WILLIAMS, ET AL.,

        Plaintiffs,

        v.

K&K ASSISTED LIVING LLC, ET AL.,

        Defendants.

_____/

Case No. 15-cv-11565

UNITED STATES DISTRICT COURT JUDGE
GERSHWIN A. DRAIN

UNITED STATES MAGISTRATE JUDGE
ELIZABETH A. STAFFORD

**ORDER GRANTING PLAINTIFFS' MOTION FOR CONDITIONAL CLASS
CERTIFICATION AND REQUEST FOR CLASS DISCOVERY [22]**

**I. INTRODUCTION**

This action is brought by three named Plaintiffs, Charles Williams, George Ruffin, and Wanda Turner, on behalf of themselves and other similarly situated employees, against their employer, K&K Assisted Living LLC and Milton Kennedy (collectively "Defendants"). *See* Dkt. No. 1. Plaintiffs allege that Defendants violated the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 201, *et seq*., by requiring Plaintiffs and other direct care workers in group homes for the mentally disabled, owned and operated by Defendants, to work a substantial amount of overtime hours without paying overtime compensation. *See* Dkt. No. 22, p. 2, ¶¶ 1–2 (Pg. ID No. 90).

This matter comes before the Court on Plaintiffs' motion asking the Court to conditionally certify a class, pursuant to 29 U.S.C. § 216(b) of the FLSA; to approve issuance of notice to the potential class members; and to order class-related discovery. *See id*. For the reasons stated more fully below, this Court **GRANTS** Plaintiffs' motion for conditional certification of a FLSA collective action and **ORDERS** class-related discovery.

-1-

## II. BACKGROUND

Plaintiffs assert that they and those "similarly situated" to them are individuals who were or currently are employed by Defendants as direct care workers at the various K&K Assisted Living facilities. Dkt. No. 22, p. 11 (Pg. ID No. 99). Defendants operate multiple group homes in the Detroit area where mentally disabled individuals reside and receive around-the-clock care. *Id.* at 2, ¶ 1 (Pg. ID no. 90). Approximately five to six resident patients live in each group home. *Id.* Direct care workers, like Plaintiffs, are employed to care for the resident patients by tending to residents' health and medication needs. *Id.*

In support of their motion, Plaintiffs submit the Declarations of the three named Plaintiffs. Dkt. No. 22-3, 22-4, 22-5 (Pg. ID No. 124–38). Each of these Declarants worked in several of Defendants' group homes. *See id.* at ¶ 2. The Declarations aver the following: All three Plaintiffs worked as direct care workers for Defendants in K&K facilities, overseeing the health and safety of mentally disabled residents. *See id.* Their duties consisted of tending to the health and medication needs of residents, providing medical care based off of plans from health care providers, completing medical charts, taking care of patients' daily hygiene needs, and ensuring that patients' care and comfort needs were met. *See id.* Duties were the same regardless of which care facility the Declarants worked in during their shifts. *See id.* at ¶¶ 7–8.

The Declarants all worked multiple shifts each week, with the length of each shift consisting of approximately 12 hours.[1] *See id.* at ¶ 5. Depending on the number of shifts each Declarant worked each week, their weekly total hours ranged from 48 hours per week to 72 hours per week, although the average appears to be around 60 hours per week. *See id.* at ¶¶ 5, 9.

---

[1] Plaintiff Turner states that her shifts were approximately 12 to 16 hours long, while both Plaintiff Williams and Ruffin assert that their shifts were 12 hours in length. *Compare* Dkt. No. 22-5, p. 2, ¶ 5 (Pg. ID No. 136) *to* Dkt. No. 22-3, p. 2, ¶ 5 (Pg. ID No. 125), 22-4, p. 2, ¶ 5 (Pg. ID No. 131).

All three Declarants aver that they did not receive lunch breaks or any other break of significant time. *Id*. at ¶ 5.

The three Plaintiffs were hourly, non-salaried employees for K&K. *See id*. at ¶6. Declarants each received an hourly wage of $8.19 per hour, without any additional compensation for overtime hours worked. *See id*. Each of the Declarants inquired about overtime pay and each was told that he or she was not entitled to it. *See id*.

Plaintiffs filed their Complaint in this action on April 30, 2015, alleging Defendants violated sections 206 and 207 by failing to pay direct care workers overtime compensation. *See* Dkt. No. 1, p. 7, ¶ 33 (Pg. ID No. 7). On October 9, 2015, Plaintiffs moved for conditional certification of this action as a collective action pursuant to section 216(b) of the FLSA. *See* Dkt. No. 22, p. 2 (Pg. ID No. 90). Plaintiffs propose the following class: "All current and former direct care workers who were employed by K&K at any time from May 7, 2012 to the present." *See id*. at 20 (Pg. ID No. 108).

### III. LEGAL STANDARD

Section 207 of the FLSA requires employers to compensate their employees at "a rate not less than one and one-half times the regular rate" of pay for time worked in excess of forty hours in any workweek. 29 U.S.C. § 207(a)(1).[2] The FLSA provides in section 216 that employers who violate section 207 "shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). The section also allows employees to recover in a collective action on behalf of themselves and "other employees

---

[2] Although Plaintiffs Complaint also alleges a FLSA violation under section 206, which sets minimum wages, it does not appear that allegations under this section were included in the present Motion.

similarly situated." *Id*.

"Section 216(b) establishes two requirements for a representative action: 1) the plaintiffs must actually be 'similarly situated,' and 2) all plaintiffs must signal in writing their affirmative consent to participate in the action." *Comer v. Wal–Mart Stores*, 454 F.3d 544, 546 (6th Cir. 2006). District courts generally follow a two-stage process for certification in order to determine if opt-in plaintiffs and lead plaintiffs are similarly situated. *See Fisher v. Michigan Bell Tel. Co.*, 665 F. Supp. 2d 819, 825 (E.D. Mich. 2009). First, during the "notice stage" the court determines whether to certify the suit as a collective action, which enables potential opt-in plaintiffs to be notified of and participate in the suit. *See id*. Later, after the court has received all the opt-in forms and discovery has concluded, the second stage occurs wherein the court utilizes a stricter standard to judge whether class members are similarly situated. *See id*. (citing *Comer*, 454 F.3d at 546).

The first stage, involved in Plaintiffs' present Motion, seeks only conditional certification. *See id*. Lead plaintiffs bear the burden of demonstrating that opt-in plaintiffs are similarly situated. *O'Brien v. Ed Donnelly Enterprises, Inc.*, 575 F.3d 567, 584 (6th Cir. 2009). However, the standard at this stage is "fairly lenient," requiring only that plaintiffs "submit evidence establishing at least a colorable basis for their claim that a class of 'similarly situated' plaintiffs exists." *Olivo v. GMAC Mortgage Corp*., 374 F. Supp. 2d 545, 548 (E.D. Mich. 2004) (quoting *Severston v. Phillips Beverage Co.,* 137 F.R.D. 264, 266 (D. Minn. 1991)). "The plaintiff must show only that 'his position is similar, not identical, to the positions held by the putative class members.' " *Comer*, 454 F.3d at 546–47 (quoting *Pritchard v. Dent Wizard Int'l Corp*., 210 F.R.D. 591, 595 (S.D. Ohio 2002)). This similarity can be illustrated by "a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims

of a common policy or plan that violated the law." *Olivo*, 374 F.Supp.2d at 548 (quoting *Flores v. Lifeway Foods, Inc*., 289 F. Supp. 2d 1042, 1045 (N.D. Ill. 2003)).

If plaintiffs meet their burden, the court may authorize notification of similarly situated employees to allow them to opt into the suit. *See Comer*, 454 F.3d at 546. "The court may also order the defendant to provide plaintiffs with the contact information of potential opt-in plaintiffs." *Cobus v. DuHadway, Kendall & Associates, Inc.*, No. 13-CV-14940, 2014 WL 4181991, at *2 (E.D. Mich. Aug. 21, 2014). Additionally, the court may limit the scope of a conditional class based on the plaintiffs' factual showing. *Id.*; *see also Shipes v. Amurcon Corp.*, No. 10-14943, 2012 WL 995362, at *6 (E.D. Mich. Mar. 23, 2012) ("[The] Court has the discretion to re-shape the class in an appropriate manner.").

## IV. DISCUSSION

Plaintiffs' proposed class includes "[a]ll current and former direct care workers who were employed by K&K at any time from May 7, 2012 to the present." Dkt. No. 22, p. 20 (Pg. ID No. 108). Despite Defendants' arguments to the contrary, Plaintiffs have met the "modest factual showing" required to conditionally certify a FLSA collective action. However, the Court will reshape the class as follows:

> All current and former persons employed as direct care workers and compensated on an hourly, non-salary basis by K&K who worked for at least one week in excess of forty hours since May 7, 2012.

*See Heeg v. Adams Harris, Inc.*, 907 F. Supp. 2d 856, 861 (S.D. Tex. 2012) (quoting *Dreyer v. Baker Hughes Oilfield Operations, Inc.*, 2008 WL 5204149, at *3 (S.D. Tex. Dec. 11, 2008)) ("A court also 'has the power to modify an FLSA collective action definition on its own' if the 'proposed class definition does not encompass only similarly situated employees.' ").

A.      **Plaintiffs Have Met Their Lenient Burden for Conditional Certification**

Plaintiffs' allegations present evidence that they and other potential plaintiffs were "similarly situated" victims of a common policy of Defendants' that violated the FLSA: (1) Defendants required Plaintiffs, in their positions of direct care workers, to work schedules of varying length, though generally around twelve hours each, without lunch breaks; (2) during these shifts, Plaintiffs' duties were similar in that the position of direct care worker required tending to the health and medication needs of mentally disabled resident patients; (3) the weekly total of Plaintiffs' shifts exceeded forty hours; and (4) Plaintiffs were paid a single rate of $8.19 for all hours worked without any additional overtime compensation, in violation of the FLSA.

In addition, Plaintiffs submitted supplemental declarations, attached to their Reply, in which they provide additional allegations regarding their understanding of their specific employer[3] and their familiarity with other putative class members' work schedules. *See* Dkt. No. 24-4, 24-5, 24-6 (Pg. ID No. 251–74). Plaintiffs claim that work shifts were posted in such a manner that workers could see one another's shifts. *See* Dkt. No. 24-4, p. 3, ¶ 7 (Pg. ID No. 253); Dkt. No. 24-6, p. 2, ¶ 3 (Pg. ID No. 260). Furthermore, all three Plaintiffs allege personal observations and conversations with co-workers who were similarly denied overtime pay while working at K&K group homes. *See id.*; Dkt. No. 24-5, p. 2, ¶ 3 (Pg. ID No. 267). Although Plaintiffs do not include the names of the co-workers with whom they spoke, such anonymity may be justified at this point considering the allegations of retaliation against workers involved

---

[3] Defendants devote a significant portion of their Response to addressing which K&K Assisted Living entities Plaintiffs brought suit against and whether or not the entities were properly named. *See, e.g.*, Dkt. No. 23, p. 15–16 (Pg. ID No. 201–02). Plaintiffs submitted an additional declaration from their counsel, supported by exhibits, that supports their decision to bring suit against the named Defendants. *See* Dkt. No. 24-8, p. 2–11 (Pg. ID No. 281–90). Nonetheless, even if Plaintiffs named the incorrect K&K facility, it does not seem as though this issue would preclude first stage collective action certification. *Cf. Fisher*, 665 F. Supp. 2d at 825 ("[T]he Court does not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations.") (alteration in original).

in this suit.[4]

Defendants claim that Plaintiffs' assertions are unsupported and conclusory. *See* Dkt. No. 23, p. 11 (Pg. ID No. 192). The Court disagrees. As the Sixth Circuit stated in *Comer*, the Plaintiffs only need to make a "modest factual showing" under this "fairly lenient standard." 454 F.3d at 547. Evidence presented on a motion for FLSA conditional certification need not meet the same evidentiary standards applicable to motions for summary judgment because there is no possibility of final disposition at the first stage of collective action certification. *Fisher*, 665 F. Supp. 2d at 826. Plaintiffs should be "afforded an opportunity, through discovery, to test fully the factual basis of [their] case." *Id*.

Here, the three Plaintiffs have stated similar allegations of fact based on their employment as direct care workers and have included bases for their observations in their declarations. The cases cited to by Defendants in their Response are unpersuasive. *See Sanchez v. JMP Ventures, L.L.C.*, No. 13 CIV. 7264 KBF, 2014 WL 465542, at *1 (S.D.N.Y. Jan. 27, 2014) (refusing conditional certification of "all tipped employees, including delivery persons, bussers, runners, waiters and bartenders" based on the declaration of a single plaintiff); *Jin Yun Zheng v. Good Fortune Supermarket Grp. (USA), Inc.*, No. 13-CV-60 ILG, 2013 WL 5132023, at *7 (E.D.N.Y. Sept. 12, 2013) (denying a single plaintiff's request for conditional certification where her declaration restated conclusory factual allegations).

---

[4] Plaintiff Williams alleges he was fired in retaliation for being among the plaintiffs in the present suit. Dkt. No. 22-3, p. 4, ¶ 11–12 (Pg. ID No. 126). Defendants stated in their sworn affidavits that Williams was voluntarily quit after being questioned about an absence. Dkt. No. 23-2, p. 4, ¶ 15 (Pg. ID No. 214); Dkt. No. 23-3, p. 4, ¶ 11 (Pg. ID No. 219). Plaintiffs allege that Defendants perjured themselves and provide a transcript of an audio recording from the meeting where Williams was allegedly terminated. Dkt. No. 24, p. 4–6 (Pg. ID No. 227–29); Dkt. No. 24-7, p. 3–4 (Pg. ID No. 277–78). The Court will not make credibility determinations or resolve factual disputes at this juncture. *See Fisher*, 665 F. Supp. 2d at 825.

**B.    Conditional Certification Is Warranted for All K&K Group Homes**

Defendants further argue that Plaintiffs' failure to state that they worked "at *any one* of the K&K group homes" is a fatal flaw in their pleadings. *See* Dkt. No. 23, p. 21 (Pg. ID No. 202). The Court disagrees. As previously recognized by another court in this district considering a similar issue, if Plaintiffs provide sufficient evidence of a company-wide practice through declarations of current or former employees, then the court may send notice to similarly situated employees at all locations at issue in the litigation. *See Fisher*, 665 F. Supp. 2d at 828.

Plaintiffs are former employees of K&K and each state that they worked in several of the group homes operated by K&K. *See* Dkt. No. 22-3, 22-4, 22-5 (Pg. ID No. 124–38). If it later comes to light that the alleged violations occurred only in specific K&K facilities, the Court can reexamine whether the members of the collective action are similarly situated at the second, stricter stage of certification. Thus, at this point, it does not seem that Plaintiffs' failure to specifically state exactly which K&K homes in which they worked is as fatal as Defendants allege.

**C.    The Court Will Have the Parties Jointly Revise the Proposed Notice**

In *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 169 (1989), the Supreme Court held that district courts have discretion to facilitate notice to potential plaintiffs in a collective action. Since the Court finds that the Plaintiffs have demonstrated employees to receive notice are similarly situated with them, the Court will utilize its discretion to authorize notification of those individuals so that they may choose whether to opt into the lawsuit. *See Comer*, 454 F.3d at 546.

In *Fisher*, the court noted several reasons why judicial notice may be appropriate in a FLSA collective action. 665 F. Supp. 2d at 828–29. First, "judicial notice protects … claims by

informing similarly situated employees of the facts needed to make an informed decision whether to opt-in." *Id*. at 829. "Second, judicial notice promotes judicial economy, helps avoid the 'multiplicity of duplicative suits' inherent in these types of lawsuits, and notifies putative plaintiffs of an economically feasible litigation option." *Id*. Third, the court found that judicial notice is appropriate where the proposed notice uses language similar to what was used in other FLSA actions. *Id*.

The notice proposed by the Plaintiffs differs significantly in form and language from other approved collective action notices. *See Fisher*, 665 F. Supp. 2d at 829 (detailing plaintiffs' exhibit 17, which contained example notices). Thus, the notice will be revised. Preferably, the parties will be able to agree on an acceptable notice addressing all of Plaintiffs' claims, and the Court will give them an opportunity to do so, as set forth in the Conclusion to this Opinion and Order.

**D.      The Court Will Grant Plaintiffs' Discovery Request**

Finally, Plaintiffs request that this Court order K&K to "provide the names, addresses, email addresses, and telephone numbers of all the direct care workers who have worked at K&K during the Relevant Time Period." Dkt. No. 22, p. 22 (Pg. ID No. 110). Defendants object that class-related discovery is inappropriate because they do not feel that there are any direct care workers (current or former) who are similarly situated to Plaintiffs. See Dkt. No. 23, p. 21 (Pg. ID No. 207). Other than the broad objection to class-related discovery, Defendants have made no specific objections to the types of information Plaintiffs request. As mentioned above, the Court is unpersuaded by Defendants' argument that there are no direct care workers who are similarly situated to Plaintiffs, based on the lenient standard in the first stage of certification. Accordingly, the Court will require Defendants disclose the required information to Plaintiffs.

**IV. CONCLUSION**

For the foregoing reasons, Plaintiffs' Motion for Conditional Class Certification and Request for Class Discovery [22] is **GRANTED**.

Additionally, the parties are directed to work together to draft a mutually acceptable notice to be sent to class members advising them of this lawsuit and their opt-in/opt-out rights. The parties should work together and submit a proposed order for such purpose. The proposed notice shall be submitted to the Court for approval within twenty (20) days of the issuance of this Opinion and Order. If the parties are unable to come to an agreement, each side will submit their proposed notice to the Court. Once the Court has approved a notice, it will issue an order directing issuance of the notice to class members.

IT IS SO ORDERED.

Dated: November 17, 2015

s/Gershwin A. Drain
HON. GERSHWIN A. DRAIN
United States District Court Judge

CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was served upon counsel of record l on November 17, 2015. Service was done electronically and by U S Postal Mail as required.

s/Teresa A. McGovern
Case Manager Generalist

-10-